UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
FREDDY MARIO HERRERA,

                    Plaintiff,

            - against -

COMMISSIONER OF SOCIAL SECURITY,

                  Defendant.
--------------------------------------------------------x

**MEMORANDUM & ORDER**
20-CV-6211 (PKC)

PAMELA K. CHEN, United States District Judge:

Plaintiff Freddy Mario Herrera brings this action under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c), against Defendant Commissioner of the Social Security Administration ("SSA"), seeking judicial review of the SSA's denial of his claims for Disability Insurance Benefits ("DIB"). Before this Court are the parties' cross-motions for judgment on the pleadings. (Dkts. 13, 17.) For the reasons set forth below, the Court grants in part and denies in part Plaintiff's motion for judgment on the pleadings and grants the Commissioner's cross-motion.

## BACKGROUND

### I.    Factual and Procedural Background[1]

Plaintiff, born in 1986, was 32 years old on April 15, 2018, the onset date of his alleged disability. Plaintiff joined the Army in 2006, and he was in active duty between 2009 and 2011. (Tr.[2] 228, 691, 791.) During his deployment in Iraq, Plaintiff sustained a left knee injury. (Tr. 228.) Plaintiff was honorably discharged from the military on December 23, 2011, and

---

[1] The Court set forth only those background facts that are necessary to resolve the instant motion.

[2] All references to "Tr." refer to the continuous pagination of the Administrative Transcript (*see* Dkt. 11), and not to the internal pagination of the constituent documents.

1

successfully applied for disability benefits through the Department of Veterans Affairs ("VA"). (Tr. 691.)  Plaintiff also applied for disability with the SSA in February 2009, based on his left knee injury, and that application was closed as of July 14, 2011.  (Tr. 73.)[3]

After his discharge from the Army, Plaintiff worked as a bank teller from October 2011 to May 2012, a security guard from October 2012 to August 2013, a corrections officer from September 2013 to March 2014, a carpenter's assistant from March 2014 to August 2014, and an iron worker from August 2014 to April 2018.[4]  (Tr. 84.)  Between 2016 and 2019, Plaintiff experienced a series of physical injuries and ailments, and related medical procedures, including: injury to his right knee in a worked-related accident in September 2016 (see Tr. 292, 371–72);[5] ACL[6] reconstructive surgery in January 2017 (Tr. 293, 499–518); a complete tear of his ACL in his left knee (Tr. 293, 640–41); a complete tear of the ACL in his right knee (Tr. 293, 642– 43); left elbow tendinitis in December 2017 (Tr. 293, 344); severe obstructive sleep apnea in November 2018 (Tr. 294, 442); and total knee replacement surgery of the right knee in January 2019 (Tr. 294, 499–518).  Plaintiff is currently enrolled as a student in the New York City College of Technology. (Tr. 50, 51.)

---

[3] There are no indications in the Administrative Transcript as to whether Plaintiff's initial application for DIB was successful.

[4] Plaintiff also worked as a bank teller from September 2005 to May 2006.  (Tr. 292.)

[5] Plaintiff has applied for and received workers compensation in connection with this injury.  (Tr. 184–85.)

[6] ACL refers to "the anterior cruciate . . . ligament[,] . . . one of the strong bands of tissue that help connect [the] thigh bone (femur) to [the] shinbone (tibia)."  Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/acl-injury/symptoms-causes/syc-20350738  (last visited 9/30/22).

Plaintiff protectively applied for DIB on October 30, 2018, alleging disability as of April 25, 2018, due to problems in his knees and left elbow, back pain, hip pain, sleep apnea, adjustment disorder, post-traumatic stress disorder (PTSD), and depressive mood swings. (Tr. 73.)  His initial application was denied on April 5, 2019.  (Tr. 20, 109–12.)  In connection with his application for DIB, Plaintiff was examined in March 2019 by Dr. Ravi Ram, an internal medicine specialist, for a consultative examination.  Dr. Ram opined that Plaintiff had moderate limitations for standing, walking, pushing, pulling, lifting, and carrying, and that he should avoid bending due to back pain.  (Tr. 664.)  Dr. Ram also found that Plaintiff should be allowed "scheduled interruptions" in his work due to his headaches, that he should avoid driving because of his sleep apnea, and that he had no limitations in sitting.  (*Id.*)[7]

Plaintiff was also examined in March 2019 by Dr. Arelen Broska, who has a Ph.D. and specializes in psychology, in connection with his DIB application.  (Tr. 294, 672.)  Dr. Broska found that Plaintiff had mild limitations in his ability to sustain concentration because of his anxiety, and mild limitations in his ability to understand, remember, and apply complex direction and instructions.  (Tr. 671.)  She also determined that Plaintiff had mild to moderate limitations in interacting adequately with supervisors, co-workers, and the public, and similarly mild to moderate limitations in regulating his emotions and controlling his behavior.  (*Id.*)

In March 2019, Plaintiff was also examined for the first time by Dr. William Christiana, a clinical psychologist, for a Compensation and Pension PTSD examination in connection with his application for VA benefits.  (Tr. 725.)  On October 25, 2019, Dr. Christiana called Plaintiff after

---

[7] Plaintiff's medical records were also examined by state agency analysts in March 2019, April 2019, and June 2019 in connection with his DIB application.  (*See* Tr. 29–30; *see also* Tr. 71–102.)  As these doctors' reviews of Plaintiff's files were limited to his physical impairments, which are not the subject of the instant motions, the Court will not recount their findings in detail.

receiving a voicemail from Plaintiff indicating that he was "starting to really lose it." (Tr. 724.) On October 29, 2019, following an hour-long session with Plaintiff, Dr. Christiana diagnosed him as suffering from PTSD and alcohol use disorder. (Tr. 716–24.) Plaintiff met with Dr. Christiana for two treatment sessions in November 2019, and two additional sessions in December 2019. (*See* Tr. 712–16, 709–11, 705–08, 702–05.)

On January 2, 2020, Dr. Christiana filled out a medical questionnaire about Plaintiff's symptoms and prognosis. Dr. Christiana found that Plaintiff's PTSD diagnosis "is related to the traumatic experiences [he] endured during his military service in Iraq" and the "alcohol use appears to be a form of self-medication for his PTSD symptoms." (Tr. 700.) Dr. Christiana also reported that Plaintiff was experiencing "nightmares, intrusive thoughts about [his] traumatic experiences, and a full range of PTSD symptoms," including displaying symptoms of "irritability, anger, hypervigilance, behavioral avoidance, intermittent suicidal thoughts, [and] poor impulse control." (Tr. 694–95.) According to Dr. Christiana, Plaintiff was previously admitted to the emergency room for his psychological issues in January 2010 and in August 2012. (*Id.*)

Dr. Christiana also evaluated Plaintiff's functional capacities across twenty categories, and assessed that in fifteen of those categories, Plaintiff displayed moderate to mild limitations, or that there was no evidence of limitations. (Tr. 696–98.) Plaintiff was determined as being "markedly limited" in his abilities "to respond appropriately to changes in the work setting," "to travel to unfamiliar places or use public transportation," and to "get along with co-workers or peers without distracting them or exhibiting behavioral extremes." (Tr. 697–98.) Dr. Christiana also assessed that Plaintiff had "moderate[]" to "marked[]" limitations in his "ability to interact appropriately with the general public" and his "ability to complete a normal workweek without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable

4

number and length of rest periods." (Tr. 697.) Finally, Dr. Christiana indicated that Plaintiff was "likely to be absent from work" due to his impairments on average about two to three times a month, and at times, more than three times a month. (Tr. 700.)

Plaintiff's October 30, 2018, DIB application was denied on April 5, 2019. (Tr. 109–11.) In May 2019, Plaintiff requested reconsideration of the SSA's decision. (Tr. 121-22.) The reconsideration decision, issued on June 11, 2019, affirmed the prior decision that he was not disabled. (Tr. 123–28.) Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ") and appeared with his attorney at the time, Ari Nat, before ALJ Jack Russak on January 3, 2020. (Tr. 39–70; *see also* Tr. 129–31, 148–53.)

At the hearing, Plaintiff testified that because of "all these issues that I have with my PTSD" that he could not "be a working person in society right now." (Tr. 55.) He explained that his PTSD "blocks [his] memory," that he needed to receive extra time accommodations to complete his examinations in college, that he "get[s] very irritable," that he will "forget" "some words" and "stutter or fumble . . . with [his] speech." (*Id.*) Plaintiff further explained that, when was "around people," he was "very vigilant," and "[got] too nervous . . . [from] paying attention to [his] surroundings." (Tr. 60.) Plaintiff also recounted "losing his cool" with the staff at his college when there "was some glitch in the [school's] system" that led to the staff telling him he owed the school money for a textbook. (Tr. 59.) He "threatened to take the book out of the school and leave," and testified that "if anybody tried . . . to stop [him, he] was going to get violent." Plaintiff also recounted an incident in July 2018, when he "was hiding in the woods" after breaking up with his girlfriend, which led to his "PTSD [reaching] an all record high [such] that [he] was actually suicidal." (Tr. 52.) Plaintiff reported that he was not taking any medications for his psychiatric impairments. (Tr. 54.)

Plaintiff also testified to his physical impairments, specifically the "flare ups" he experienced on his left and right knees, and the fact that he needed another surgery in his right knee. (Tr. 46.)  Plaintiff used a cane to walk, but he had no limitations on driving, dressing himself, or taking a bath.  (Tr. 45–46.)  Plaintiff used a Continuous Positive Airway Pressure ("CPAP") machine for his obstructive sleep apnea, and was also taking 1600 milligrams of ibuprofen each day.  (Tr. 48, 54.)

During the hearing, the ALJ also heard testimony from vocational expert ("VE") Esperanza Distefano, who explained that most employers "will not tolerate [employees who spend] 20 percent [of their working hours] off task," and that an "individual [who] is absent more than one day per month on a continuous basis . . . would be unable to maintain employment."  (Tr. 68–69.)

By decision dated January 28, 2020, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act (the "Act") from October 30, 2018, the date the DIB application was filed, through the date of the ALJ's decision.  (Tr. 32.)  On March 24, 2020, Plaintiff requested a review of the ALJ's decision.  (Tr. 179–81.)  On May 18, 2020, the Appeals Council denied Plaintiff's request for a review of the ALJ's decision, making the ALJ's determination the Commissioner's final decision.  (Tr. 6–10.)  On July 21, 2020, Plaintiff's counsel requested a 60-day extension of the period to file this action, citing the COVID-19 Pandemic and their inability to get in contact with Plaintiff.  (Tr. 5.)  On November 18, 2020, the Appeal Council granted a 30-day extension for Plaintiff to file an action for judicial review of its decision.  (Tr. 2.)  Thereafter, Plaintiff timely[8] commenced this action on December 22, 2020.  (Complaint, Dkt. 1.)

---

[8] 42 U.S.C. § 1383(c)(3) provides that "[t]he final determination of the Commissioner of Social Security after a hearing . . . shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."  42 U.S.C. § 1383(c)(3).  According to 42 U.S.C. § 405(g),

## II.     The ALJ's Decision

In evaluating disability claims, the ALJ must adhere to a five-step inquiry.  The plaintiff

bears the burden of proof at the first four steps of the inquiry; the Commissioner bears the burden

at the final step.  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citation omitted).[9]  First,

the ALJ determines whether the plaintiff is currently engaged in "substantial gainful activity."  20

C.F.R. § 416.920(a)(4)(i).  If the answer is yes, the plaintiff is not disabled.  *Id.*   If the answer is

no, the ALJ proceeds to the second step to determine whether the plaintiff suffers from a severe

impairment.  *Id.*  § 416.920(a)(4)(ii).  An impairment is severe when it "significantly limits [the

plaintiff's] physical or mental ability to do basic work activities."  *Id.*  § 416.922(a).  If the plaintiff

does not suffer from an impairment or combination of impairments that is severe, then the plaintiff

is not disabled.  *Id.*  § 416.920(a)(4)(ii).  But if the plaintiff does suffer from an impairment or

combination of impairments that is severe, then the ALJ proceeds to the third step and considers

---

[a]ny individual, after any final decision of the Commissioner of Social Security
made after a hearing to which he was a party . . . may obtain a review of such
decision by a civil action commenced within sixty days after the mailing to him of
notice of such decision or within such further time as the Commissioner of Social
Security may allow.

42 U.S.C. § 405(g).  "Under the applicable regulations, the mailing of the final decision is
presumed received five days after it is dated unless the [plaintiff] makes a reasonable showing to
the contrary."  *Kesoglides v. Comm'r of Soc. Sec.*, No. 13-CV-4724 (PKC), 2015 WL 1439862, at
*3 (E.D.N.Y. Mar. 27, 2015) (citing 20 C.F.R. §§ 404.981, 422.210(c)).  The SSA's final decision
was issued May 18, 2020 (Tr. 6–10).  On November 18, 2020, the Appeal Council granted a 30-
day extension for Plaintiff to file an action for judicial review of its decision, starting five days
after the date of the letter.  (Tr. 2).  Plaintiff filed this action on December 22, 2020, less than 30
days after the presumed receipt of the extension letter, rendering this appeal timely.

[9] Some cases cited below involve DIB regulations, while others involve Social Security
Income ("SSI"), but the DIB and SSI regulations are "virtually identical."  *Canter v. Saul*, No. 19-
CV-157 (KAD), 2020 WL 887451, at *1 n.2 (D. Conn. Feb. 24, 2020).  The DIB regulations are
found at 20 C.F.R. § 404.900 *et seq.*, while the parallel SSI regulations are found at 20 C.F.R.
§ 416.901 *et seq.*

whether they meet or medically equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings").  *Id.*  § 416.920(a)(4)(iii); *see also id.*  Pt. 404, Subpt. P, App'x 1. If the ALJ determines at step three that the plaintiff has an impairment or combination of impairments that meets or equals one of the listed impairments, then the ALJ will find that the plaintiff is disabled under the Act.  *Id.*  § 416.920(a)(4)(iii).  On the other hand, if the plaintiff does not have such impairment(s), the ALJ must determine the plaintiff's residual functional capacity ("RFC") before continuing to steps four and five.  To determine the plaintiff's RFC, the ALJ must consider the plaintiff's "impairment(s), and any related symptoms, [that] may cause physical and mental limitations that affect what [the plaintiff] can do in a work setting."  *Id.*  § 416.945(a)(1). The ALJ will then use the RFC finding in step four to determine if the plaintiff can perform past relevant work.  *Id.*  § 416.920(a)(4)(iv).  If the answer is yes, the plaintiff is not disabled.  *Id.* Otherwise, the ALJ will proceed to step five and determine whether the plaintiff, given their RFC, age, education, and work experience, has the capacity to perform other substantial gainful work in the national economy.  *Id.*  § 416.920(a)(4)(v).  If the answer is yes, the claimant is not disabled; otherwise, the claimant is disabled and is entitled to benefits.  *Id.*

Here, at step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since April 25, 2018, the alleged onset date.  (Tr. 22.)  At step two, the ALJ determined that Plaintiff had the following severe impairments: obstructive sleep apnea, osteoarthritis of the left knee, an ACL tear of the right knee, obesity, and PTSD.  (*Id.*)  At step three, the ALJ found that Plaintiff's impairments—individually and in combination with each other—did not meet or medically equal any of the impairments in the Listings.  (*Id.*)  The ALJ then determined Plaintiff's RFC as follows:

[T]he claimant has the residual functional capacity to perform sedentary work[10] . . . except that he can frequently push and/or pull bilaterally.  He can never operate controls bilaterally.  He can occasionally climb ramps and stairs.  He can never climb ladders, ropes, or scaffolds.  He can never balance.  He can never stoop, crouch, kneel, or crawl.  He is limited to no exposure to moving machinery, unprotected heights, or driving vehicles.  He must avoid concentrated exposure to extreme heat; extreme cold; wetness; humidity; irritants, such as fumes, odors, dust, and gases; poorly ventilated areas; and chemicals.  He is limited to simple, routine tasks.  He is limited to work in a low stress job, defined as having occasional decision making required and occasional changes in the work setting.  He is limited to work with occasional judgment required on the job.  He is limited to no interaction with the public.  He is limited to only occasional interaction with coworkers.  He is limited to only occasional interaction with supervisors.

(Tr. 24–25.)  In assessing Plaintiff's RFC, the ALJ considered several medical opinions, but found only the opinions of Dr. Ram, who conducted the consultative examination for Plaintiff's physical impairments, and Dr. Christiana, Plaintiff's treating psychiatrist, to be "persuasive."  (Tr. 28–30.)[11]

At step four, the ALJ concluded that due to his severe impairments, Plaintiff could not perform his past work as a corrections officer, ironworker, construction laborer, bank teller, security guard/lead guard in the Army, or combat rifle crewmember.  (Tr. 30.)  Finally, at step five, the ALJ found that there are other jobs that exist in significant numbers in the national economy that Plaintiff can perform, namely, document preparer, addresser, and cutter and paster of press clippings.  (Tr. 32.)  The ALJ thus concluded that Plaintiff was not disabled.  (Tr. 32.)

---

[10] The Act's regulations define "sedentary work" as work that "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 416.967(a).  The regulations further note that a sedentary job "is defined as one which involves sitting," but also requires "a certain amount of walking and standing . . . in carrying out job duties." *Id.*

[11] The ALJ deemed the opinion of Dr. Broska to be unpersuasive for not adequately considering Plaintiff's subjective symptoms and offering an opinion that is less restrictive than indicated by the evidence as a whole.  (Tr. 29.)

9

**STANDARD OF REVIEW**

Unsuccessful claimants for disability benefits may bring an action in federal district court seeking judicial review of the Commissioner's denial of benefits.  42 U.S.C. § 405(g); 42 U.S.C. § 1383(c).  In reviewing a final decision of the Commissioner, the Court's role is "limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera*, 697 F.3d at 151.  "Substantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (*per curiam*) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)) (internal quotation marks and brackets omitted).  In determining whether the Commissioner's findings are based on substantial evidence, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn."  *Id.*  However, "it is up to the agency, and not this court, to weigh the conflicting evidence in the record."  *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998).  If there is substantial evidence in the record to support the Commissioner's findings as to any fact, those findings are conclusive and must be upheld.  42 U.S.C. § 405(g); *see also Cichocki v. Astrue*, 729 F.3d 172, 175–76 (2d Cir. 2013) (*per curiam*).

**DISCUSSION**

While the parties agree that the ALJ committed error in his decision as to Plaintiff's disability, they disagree as to the precise nature of those errors and the appropriate remedy.  Plaintiff argues that the ALJ failed to reconcile various aspects of Dr. Christiana's opinion, which the ALJ found persuasive, with the ALJ's determinations that (1) Plaintiff was not disabled (step three), (2) Plaintiff had the RFC to perform sedentary work with certain limitations, and (3) there are jobs that exist in significant numbers in the economy that Plaintiff could undertake (step five).

Plaintiff urges this Court to remand solely for a calculation and award of benefits. (*Id.* at 19, 21.) The Commissioner agrees that the ALJ made these errors, but argues that Plaintiff's case should be remanded so that the ALJ can "properly consider Dr. Christiana's opinion in accordance with agency policy." (*See* Defendant's Memorandum of Law ("Def. Mem."), Dkt 17-1, at 16.) For the reasons set forth below, the Court finds that remand for further consideration of evidence is appropriate.

## I.    The ALJ's Determination Was Not Supported by Substantial Evidence

An ALJ's RFC determination must be supported by substantial evidence. *See Talavera*, 697 F.3d at 151.   As noted, "[s]ubstantial evidence is more than a mere scintilla.   It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian*, 708 F.3d at 417 (*quoting Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and brackets omitted)).   In determining if the ALJ's conclusions are based on substantial evidence, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Id.*  If there is substantial evidence within the record to support the Commissioner's findings, those findings are conclusive and must be upheld.   42 U.S.C.   § 405(g).   As explained further below, the ALJ's RFC determination lacked substantial evidence and should be remanded.

### A.  The ALJ Failed to Reconcile Inconsistencies in the Step Three Determination

An ALJ's evaluation of a claimant's mental impairments must follow a "special technique" pursuant to 20 C.F.R. § 404.1520.  *See Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) ("Th[e] regulations require application of a 'special technique' at the second and third steps of the five-step framework [ ] and at each level of administrative review.") (internal citations omitted).  This technique requires "the reviewing authority to determine first whether [a] claimant has a medically determinable mental impairment, [and if] there is such impairment, the reviewing authority must

11

rate the degree of functional limitation resulting from the impairment(s) in accordance with 20 C.F.R. § 404.1520a(c), which specifies four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation." *Hernandez v. Astrue*, 814 F. Supp. 2d 168, 180–81 (E.D.N.Y. 2011) (internal quotation marks and citations omitted); *see* 20 C.F.R. § 404.1520a(b), (c). "[I]f the degree of limitation in each of the first three areas is rated mild or better, and no episodes of decompensation are identified . . . [,] the reviewing authority . . . will conclude that the claimant's mental impairment is not severe and will deny benefits." *Kohler*, 546 F.3d at 266.

Here, because the ALJ found that Plaintiff had several severe mental impairments, the determinative issue at step three was whether these impairments met the severity impairments in the Listings.  The ALJ found that Plaintiff had moderate limitations in (1) remembering or applying information, (2) concentrating, persisting or maintaining pace, and (3) adapting or managing oneself, and that Plaintiff had a marked limitation in interacting with others.  (Tr. 23–24.) Accordingly, the ALJ concluded that Plaintiff did not qualify as being disabled under the paragraph B criteria of the Listings, which requires the claimant to have at least two "marked limitations" or one "extreme limitation."  (Tr. 24); *see also Bonilla Mojica v. Berryhill*, 397 F. Supp. 3d 513, 526 (S.D.N.Y. 2019).  The ALJ also considered whether Plaintiff's mental impairments satisfied paragraph C criteria of the regulations, but found that they did not.  (*Id.*)

In his medical questionnaire, Dr. Christiana determined that Plaintiff was "markedly limited" in his abilities "to respond appropriately to changes in the work setting" and his "ability to travel to unfamiliar places or use public transportation."  (Tr. 697–98.)  These abilities are two out of four that comprise the broader category of "Adaptation" on the medical questionnaire.  (*Id.*) Therefore, Plaintiff contends that the ALJ's decision to find that Plaintiff had moderate, as opposed

to marked, limitations in "adapting or managing oneself" was inconsistent with the medical opinion of Plaintiff's treating psychiatrist.  (*See* Plaintiff's Memorandum of Law ("Pl. Mem."), Dkt. 13-1, at 17–18.)

The Court agrees that there is at least a *prima facie* case for inconsistency between the ALJ's designation of only a moderate limitation for that category of "adapting and managing oneself" (Tr. 23–24), and his determination that Dr. Christiana's opinion was persuasive, because of Dr. Christiana's "treating relationship with the claimant and the [fact that] his opinion [was] consistent with and supported by . . . treatment records." (Tr. 30).  Because the ALJ did not adequately explain this inconsistency, the Court is unable to conduct meaningful review of his decision.  *See Long v. Berryhill*, No. 18-CV-1146 (PKC), 2019 WL 1433077, at *4 (E.D.N.Y. Mar. 29, 2019) ("[R]emand is appropriate where 'inadequacies in the ALJ's analysis frustrate meaningful review,' such as when the ALJ makes credibility determinations and draws inferences from the record, yet fails to fully explain the basis for them.") (quoting *Cichoki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)).   Accordingly, the case shall be remanded so that the ALJ can explain his consideration of this inconsistency in the record and reconcile it, if possible, based on sufficient evidence.

**B.  The ALJ Failed to Properly Determine Plaintiff's RFC**

Plaintiff further argues that the ALJ's determination of Plaintiff's RFC is not supported by substantial evidence because the ALJ did not incorporate Dr. Christiana's opinion of Plaintiff's marked limitation into the RFC.  (Pl. Mem, Dkt. 13-1, at 19–20.)  Specifically, Dr. Christiana found that Plaintiff was "markedly limited" in his "ability to respond appropriately to changes in the work setting" and his "ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes."  (Tr. 697.)  The ALJ instead found in his RFC that Plaintiff could tolerate "occasional changes in the work setting" and "occasional interaction with

coworkers." (Tr. 25.)   The ALJ's RFC and Dr. Christiana's opinion of Plaintiff's capacity are plainly in conflict, and as the Commissioner acknowledges, the ALJ was required to explain why he did not adopt these limitations given that he found Dr. Christiana's opinion as a whole to be persuasive. (Def. Mem., Dkt. 17-1, at 14 (citing Social Security Ruling 96-8p, at *7 (July 2, 1996) ("If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.")).) Because the ALJ failed to do so, remand is appropriate.

### C.  The ALJ Failed to Reconcile Inconsistencies in the Step Five Determination

Finally, the ALJ erred in his step five determination that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. During the hearing the ALJ posed a hypothetical question to the VE about the type of work, if any, an individual who has Plaintiff's physical limitations, and some of the limitations due to his mental impairment—*i.e.,* work in a low stress job, and only occasional changes in the work setting, occasional judgment required on the job, no interaction with the public, and occasional interaction with co-workers— could perform. (*See* Tr. 66–67.) The VE testified that such a hypothetical individual could perform the duties of a document preparer, addresser, and cutter and paster of press clipping (Tr. 67–68), and the ALJ adopted these three jobs as examples in his step five determination (Tr. 31–32).

However, the ALJ's hypothetical did not account for Dr. Christiana's assessment that due to his impairments, Plaintiff was "likely to be absent from work" on average about two to three times a month, and at times, more than three times a month. (Tr. 700.) In fact, when the VE was asked by Plaintiff's counsel at the hearing about these restrictions, she testified that a hypothetical individual who "is absent more than one day per month on a continuous basis . . . would be unable

to maintain employment."  (Tr. 68–69.)  Therefore, even the three jobs the VE suggested would not be available to Plaintiff if he were absent two to three times a month.

If the ALJ found that Dr. Christiana's opinion was unpersuasive as to that specific portion about Plaintiff's frequency of likely absences at work, he should have explained why he found that opinion unpersuasive.  The ALJ's failure to do so "frustrates meaningful review" and therefore, remand is appropriate.  *See Long*, 2019 WL 1433077, at *4 (quoting *Cichoki*, 729 F.3d at 177).  On the other hand, if the ALJ agreed that Plaintiff was likely to be absent from work at least two to three times a month, remand is still appropriate because the hypothetical question that the ALJ asked the VE failed to "accurately reflect the limitations and capabilities" of Plaintiff.  *See Emsak v. Colvin*, No. 13-CV-3030 (PKC), 2015 WL 4924904, at *17 (E.D.N.Y. Aug. 18, 2015) (quoting *Calabrese v. Astrue*, 358 F. App'x 276 (2d Cir. 2009)).

## II.      Remand for Further Proceedings

Though the Court finds that the ALJ committed errors requiring remand of Plaintiff's claim, the Court finds that remand solely for the calculation and award of benefits is not appropriate on the current record.  Reversal and remand for the calculation of benefits is appropriate only where the record provides "persuasive proof of disability and remand for further evidentiary proceedings would serve no purpose."  *See Bradley v. Colvin*, 110 F. Supp. 3d 429, 447 (E.D.N.Y. 2015) (citations omitted).

Plaintiff contends that the ALJ should have rendered a "fully favorable determination" for him on step three since Dr. Christiana "provided marked limitations in at least two separate domains." (Pl. Mem., Dkt. 13-1, at 19).  However, the Court disagrees.  The fact that the ALJ did not acknowledge and reconcile the inconsistences between his determination at step three of Plaintiff's functional limitations (due to Plaintiff's mental impairments) with Dr. Christiana's assessments does not necessarily mean the ALJ agrees with Dr. Christian's opinion.  Because "it

15

is up to the agency, and not this court, to weigh [] conflicting evidence in the record," *see Clark*, 143 F.3d at 118, the Court finds it appropriate for the ALJ to be granted the opportunity to explain whether he has a sufficiently supported reason for disagreeing with Dr. Christiana's opinion for the purposes of his step three analysis.

Moreover, the Court is not convinced by Plaintiff's argument that "on the face" of Dr. Christiana's opinion, the ALJ should have rendered "a fully favorable decision" for Plaintiff on step three. Dr. Christiana rated Plaintiff's limitations in twenty categories of functionality that fall into four broader categories. (Tr. 696–98.) Within the broad category of "adaptation," there are four sub-categories, and Dr. Christiana rated Plaintiff as having "markedly limited" abilities in two of the four categories. (Tr. 697). In fact, one of those abilities within the adaptation category relates to Plaintiff's "ability to travel to unfamiliar places or to use public transportation," but this Court has explained before that "a claimant's . . . ability to use public transportation is not a factor that should be considered in determining a claimant's limitation in social functioning." *See Emsak*, 2015 WL 4924904, at *14. To the extent that Plaintiff's difficulty in using transportation was the foundation of Dr. Christiana's "marked limitation" assessment, the ALJ will have to weigh the utility and significance of this particular assessment. The Court will also note that Dr. Christiana's medical questionnaire did not include an option for "extreme limitations," which suggests that his rating system did not align completely with the regulations, which requires a finding of disability if the claimant has at least two "marked limitations" or one "extreme limitation." *See Bonilla Mojica*, 397 F. Supp. 3d at 526. Among other things, the ALJ should clarify the rating scale and criteria that Dr. Christiana applied in evaluating Plaintiff's functional abilities, and whether or not Dr. Christiana found that Plaintiff had "extreme limitations" in any category.

16

For similar reasons, the Court does not find that the ALJ's failure to resolve inconsistencies with respect to the RFC determination or the likely frequency of Plaintiff's absences "so clearly points to a [] disabling condition as to justify a remand solely for the calculation of benefits." *Longbardi v. Astrue*, No. 07-CV-5952 (LAP), 2009 WL 50140, at *38 (S.D.N.Y. Jan. 7, 2009) (remanding for ALJ to re-weigh the evidence from treating sources). To the extent that there were any reasons for the ALJ to disagree with Dr. Christiana's opinions, the ALJ should be given the chance to explain and justify them. *See Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) ("In our review, we defer to the Commissioner's resolution of conflicting evidence.").

The Court, however, is mindful of the "often painfully slow process by which disability determinations are made" and that a remand for further proceedings could result in substantial delay. *Butts v. Barnhart*, 388 F.3d 377, 387 (2d Cir. 2004) (citations and quotations omitted). Therefore, the Court directs that further proceedings before an ALJ be completed within 90 days of the date of this Order, and that if the ALJ again determines that Plaintiff is not entitled to benefits, a final decision of the Commissioner should be rendered within 90 days of Plaintiff's appeal from the ALJ's decision. *See Sanchez v. Colvin*, No. 14-CV-4939 (PKC), 2015 WL 5774853, at *11 (E.D.N.Y. Sept. 30, 2015) (directing further proceedings before an ALJ to be completed within 60 days of the order); *cf. Catsigiannis v. Astrue*, No. 08-CV-2177 (ENV) (LB), 2013 WL 2445046, at *5 (E.D.N.Y. June 4, 2013) (directing expedited consideration of plaintiff's claim within 60 days by the ALJ and the Commissioner); *Butts*, 388 F.3d at 387 (directing district courts to consider imposing a time limit on subsequent proceedings in cases where the ALJ failed to call a vocational expert).

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in Plaintiff's motion for judgment on the pleadings and grants the Commissioner's cross-motion.  The Commissioner's decision is remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this Memorandum & Order.  The ALJ is directed to complete any further proceedings within 90 days of this Order, and if the ALJ again determines that Plaintiff is not entitled to benefits, a final decision of the Commissioner should be rendered within 90 days of Plaintiff's appeal from the ALJ's decision.  The Clerk of Court is respectfully directed to enter judgment and close this case.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: September 30, 2022
       Brooklyn, New York